1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6            FOR THE DISTRICT OF ARIZONA
7
8    Thomas M. Nielson,                    )    No. CV 04-121-TUC-FRZ
                                           )
9              Plaintiff,                  )    **ORDER**
                                           )
10   vs.                                   )
                                           )
11                                         )
     Jo Anne B. Barnhart, Commissioner of  )
12   Social Security,                      )
                                           )
13             Defendant.                  )
                                           )
14   _____ )

15   **I.  BACKGROUND**
16
17        Pending before the Court is Plaintiff's Motion for Summary Judgment pertaining to the
18   denial of disability benefits by the Administrative Law Judge in his case.  Also pending
     before the Court is Defendant's Cross-Motion for Summary Judgment regarding the same
19
     denial of disability benefits.
20
21        United States Magistrate Judge Glenda E. Edmonds issued a Report and Recommendation
22   which recommended granting Plaintiff's Motion for Summary Judgment, and denying
     Defendant's Cross-Motion for Summary Judgment.  The Report and Recommendation
23
     indicated that any party could file written objections after being served with a copy of the
24
25   Report and Recommendation.  Defendant filed objections.  Plaintiff did not file a response
26   to Defendant's objections, and did not file any of his own objections to the Report and
     Recommendation.
27
28

1

## II. **STANDARD OF REVIEW**

2      The Court reviews de novo the objected-to portions of the Report and Recommendation.

3   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   The Court reviews for clear error the

4   unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*,

5   170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204

6   (D. Or. 1998).

7   ## III. **DISCUSSION**[1]

8      **A. Defendant's Objections**

9      *1. Date Last Insured*

10     Defendant argues that the Report and Recommendation fails to consider the significance

11  of Plaintiff's date last insured.  *See* Defendant's Objections at 1-3.  The Court disagrees.  A

12  review of the record shows that the Report and Recommendation clearly recognized the

13  importance of the date last insured to the proper analysis of the dispute, and proceeded to

14  methodically analyze the pertinent testimony at the hearings and medical records both before

15  and after the date last insured to determine the status of Plaintiff's disability prior to the date

16  last insured.  *See* Report and Recommendation at 2, 4, 8, 11-18 (discussing the date last

17  insured as December 31, 1989 and recognizing the significance of that date for determining

18  disability).  Defendant's objection is denied.

19

20

21

_____

22     [1]As Magistrate Judge Edmonds' Report and Recommendation throughly discussed the
23  relevant facts and law, the Court will not repeat that entire discussion; rather, the Court will only
    discuss these issues as necessary to resolve the specific objections filed by Defendant.  The Court
24  notes that a previous Report and Recommendation was also issued in this case by Magistrate Judge
    Nancy F. Fiora which was subsequently adopted by the Honorable Raner C. Collins.  *See* CV 00-
25  519-TUC-RCC.  The previous Report and Recommendation resulted in a remand of the case for
    further proceedings before the Administrative Law Judge ("ALJ").   However, after further
26  proceedings, the ALJ again denied disability benefits, and Plaintiff again appealed the denial of
    disability benefits which necessitated another round of briefing before the District Court, another
27  Report and Recommendation, and the Order at bar resolving the objections to the Report and
28  Recommendation.

1        *2. Scope of Review and the Treating Physician*

2        Defendant argues that the Report and Recommendation exceeded the scope of review and

3    misapplied the treating physician rule.  *See* Defendant's Objections at 3-9.  The Court

4    disagrees.  Defendant primarily argues that the Report and Recommendation improperly

5    rejected the ALJ's analysis and conclusions regarding the significance (or lack thereof) of

6    Plaintiff's very limited work history with his father's uranium business, and otherwise failed

7    to properly analyze the medical evidence at issue in this case.  *See* Defendant's Objections

8    at 4-5.  The Report and Recommendation throughly and properly resolved these issues, and

9    stated in relevant part:

10        The ALJ improperly rejected Munsey's opinion that Nielson is unable to work . . .
     Munsey was Nielson's treating physician from 1961 to 1988. (Tr. 200-01).  Munsey
11        diagnosed Nielson with scleroderma resulting in myositis, tendinitis,
     lymphadenopathy/lymphadentitis, Dupuytren's contractures and Peyronie's disease
12        (Fibrosclerosis), and weakness and fatigue. *Id.*  In 1968, he concluded that Nielson was
     unable to perform gainful work of any kind. (Tr. 254).  The ALJ apparently accepted
13        Munsey's opinion as it pertained to Nielson's condition prior to 1982. (Tr. 426).  He
     believed it was no longer accurate once Nielson returned to work and demonstrated his
14        ability to perform substantial gainful activity.  *Id.*  The ALJ's characterization of
     Nielson's work, however, is not supported by the record.
15            Between 1982 and 1984, Nielson worked for a uranium mining company,
     Minerals West.  Minerals West was registered as a public corporation, but in practice,
16        it was controlled by Nielson's family.  Nielson's father was the major shareholder. (Tr.
     39).  Family members controlled three of the five seats on the board.  (Tr. 564).
17        Nielson was appointed president of Minerals West by his father.  (Tr. 39).
            As president of the corporation, Nielson met with the directors, and
18        familiarized himself with the company. (Tr. 45, 562).  It does not appear, however, that
     he worked with the type of persistence and pace ordinarily required in the working
19        environment. He testified, "I would only go in as I could and when I could." (Tr. 562).
     When asked by the ALJ, "Well, did you do anything during 1984?," he replied, "Your
20        Honor, I'm sure I did something, but it was not substantial, your Honor." (Tr. 44).  He
     did not perform administration or management work. (Tr. 47).  He admitted he was "a
21        figurehead," but in his own defense he asserted "I did what I could when I could." (Tr.
     47).  He reported receiving $37,800 during 1984, but he conceded, "I was overpaid."
22        (Tr. 44).
             Based on Nielson's uncontradicted testimony, his work was not substantial
23        gainful activity . . . He obtained his position only because his father was in control of
     the company . . . He did not perform the managerial tasks ordinarily expected of a
24        company president. (Tr. 47).  He worked only when he was able . . . There is no
     evidence he worked with the kind of persistence and pace that is required for ordinary
25        employment.
            The ALJ found it highly significant that Nielson stopped working for
26        economic reasons. (Tr. 426).  He concluded this is strong evidence that Nielson was
     not disabled and good reason to discount Munsey's opinion of disability.  The court
27        does not accept the ALJ's analysis.
            Ordinarily, the fact that a claimant stops working is evidence supporting his
28        claim of disability.  One may infer the claimant is no longer working because of his

                                       - 3 -

impairments.  On the other hand, if the claimant stops working for economic reasons (because he was laid off, for example), this inference no longer applies.  In fact, the opposite conclusion might be drawn.  One may conclude the claimant would still be working but for the economic downturn, and consequently he is not disabled.

It appears the ALJ drew this very conclusion.  He reasoned Nielson is not disabled in large part because he stopped working for economic reasons.  In this case, however, the general rule does not apply.  The "work" Nielson performed was never substantial gainful activity in the first place.  Accordingly, the reason why Nielson stopped working is irrelevant.  The ALJ also observed that Nielson earned approximately $70,000 between 1982 and 1984.  (Tr. 425).  Ordinarily, earning this amount of money indicates the claimant is performing substantial gainful activity . . . In this case, however, Nielson's pay was determined by the fortunes of the company and his familial ties, not by his personal productivity.  (Tr. 40-41) . . . Minerals West entered into a lucrative leasing arrangement with another company and the royalties became Nielson's salary.  (Tr. 40-41).  Nielson's salary ended when the royalties ended, not because his productivity declined.  *Id.*  The size of Nielson's salary is not evidence that his work was substantial gainful activity.

The ALJ erred when he relied on Nielson's work as president of Minerals West as evidence that he was able to perform substantial gainful activity.  Accordingly, he erred when he relied on Nielson's work as substantial evidence supporting his decision to reject the opinion of his treating physician, Munsey.

The ALJ further noted that Munsey's opinion of disability was written "12 years before the period in question. . . ." (Tr. 426).  Certainly, if a doctor's opinion is written much earlier than the alleged disability onset date, it is possible the opinion does not accurately describe the claimant's condition during the relevant period.  The claimant might have recovered in the interim.  Here, however, the evidence suggests that Nielson's condition has not changed significantly since Munsey first wrote that Nielson was unable to work.

Nielson suffers from an incurable condition.  (Tr. 69, 71-72).  It manifests itself in Dupuytren's contractures and muscle wasting – conditions for which there is no medication available.  *Id.*  His fatigue and pain have been essentially constant for many years.  (Tr. 58-62).  In 1995, Munsey wrote a summary of Nielson['s] condition.  *Id.*  In that summary, he documents, if anything, a gradual increase in Nielson's symptoms over the years.  *Id.*  The evidence in the record indicates that Nielson's condition has not improved significantly since 1972 when Munsey opined that Nielson was unable to work.  (Tr. 254, 268).  Accordingly, the fact that Munsey's opinion of disability was written 12 years before the period in question is not particularly significant.

The ALJ found the opinion of the examining physician, Suarez, to be particularly persuasive.  Suarez's opinion, however, is problematic.  It does not discuss the combined effect all of Nielson's impairments.  Accordingly, his implicit conclusion that Nielson is able to work is not persuasive authority . . .

On September 4, 2002, Suarez examined Nielson for the Disability Determination Services.  (Tr. 490-93).  He concluded Nielson's primary work related impairments were his Dupuytren contractures and his hearing loss.  *Id.*  He opined that Nielson should be able to lift 20 pounds occasionally and 10 pounds frequently.  *Id.*  The ALJ accepted Suarez's opinion as persuasive evidence supporting his conclusion that Nielson could perform light work . . .

Suarez's opinion, however, is incomplete.  It discusses Nielson's hand contractures, but it does not discuss his chronic pain and fatigue.  Accordingly, it is not persuasive evidence that Nielson can perform light work.  Nielson's hands might be capable of lifting an object weighing up to 20 pounds, but if Nielson suffers from disabling pain and fatigue, he still is unable to work.  Suarez's evaluation of Nielson's work-related impairments is not based on a consideration of all his symptoms.  It is

1
incomplete and therefore does not support the ALJ's conclusion that Nielson can perform light work . . .

2
On the other hand, Suarez's failure to discuss Nielson's pain and fatigue might

3
have been deliberate. He may believe these symptoms are minimal and do not affect Nielson's ability to work. Suarez mentions Nielson's complaints of pain and fatigue in passing in the section entitled "Scleroderma with Dupuytren contractions." Suarez

4
twice states in his report that he found no significant objective findings of scleroderma. He may have concluded Nielson's pain and fatigue must be minimal because he

5
observed no significant objective findings. If this is the case, Suarez is relying on an assumption that is not supported by the medical record.

6
There are, of course, medical conditions in which symptoms of pain and fatigue are accompanied by objective medical findings. Rheumatoid arthritis, for

7
example, often results in redness and swelling of the joints . . . Nielson, on the other hand, suffers from a disease in which his pain and fatigue are *not* accompanied by

8
objective medical findings. None of Nielson's treating physicians state that his pain and fatigue should be accompanied by objective medical symptoms other than the

9
Dupuytren contractions and Peyronie's disease which are readily apparent. In fact, Ludt states that Nielson's pain and muscle weakness are caused by fibromyalgia. (Tr.

10
198). This is a condition that manifests itself in generalized pain of the fibrous tissues and does not have any objective symptoms. *See Benecke v. Barnhart*, 379 F.3d 587,

11
594 (9th Cir.2004) (Where the claimant was diagnosed with fibromyalgia, it was error for the ALJ to expect her to produce objective medical evidence in support of her

12
claim.). If Suarez was expecting to see objective signs of Nielson's pain and fatigue, he was making an assumption unsupported by the medical record.

13
Moreover, this assumption is not accepted by the SSA. *See Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996). As discussed in more detail below, a claimant is not

14
required to present objective medical evidence of the extent of his symptoms. *Id.* It is sufficient that he presents evidence of an underlying impairment that could cause

15
some level of symptoms. *Id.*

16
If Suarez discounted Nielson's pain and fatigue because he found no significant findings of scleroderma, his analysis is in error. Suarez's opinion is either

17
incomplete or based on an unfounded assumption. Either way, the ALJ should not have accorded his opinions "substantial persuasive weight." (Tr. 426).

18
The ALJ did not provide specific and legitimate reasons for discounting the opinions of Nielson's treating physician, Munsey, whose opinions should be credited as a matter of law . . .

19
The ALJ also improperly failed to credit Nielson's subjective testimony of disability. A claimant who alleges disability based on subjective symptoms "must

20
produce objective medical evidence of an underlying impairment or impairments" and "show that the impairment or combination of impairments could reasonably be

21
expected to (not that it did in fact) produce some degree of symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996). "The claimant need not produce objective

22
medical evidence of the pain or fatigue itself or the severity thereof." *Id.* "Nor must the claimant produce objective medical evidence of the causal relationship between the

23
medically determinable impairment and the symptom." *Id.* "Finally, the claimant need not show that [his] impairment could reasonably be expected to cause the *severity*

24
of the symptom [he] has alleged; [he] need only show that it could reasonably have caused *some* degree of symptom." *Id.* (emphasis added). This approach to the evaluation of

25
a claimant's testimony "reflects the highly subjective and idiosyncratic nature of pain and other such symptoms." *Id.*

26
Once a claimant makes the required showing "and there is no affirmative evidence suggesting [he] is malingering, the ALJ may reject the claimant's testimony

27
regarding the severity of [his] symptoms only if he makes specific findings stating clear and convincing reasons for doing so." *Id.* at 1283-84 . . .

28

In this case, the ALJ found Nielson has underlying medical impairments that could reasonably cause the symptoms alleged. The ALJ found no affirmative evidence of malingering; consequently, he could discount Nielson's testimony only after presenting clear and convincing evidence. This he did not do.

The ALJ discounted Nielson's subjective testimony of disability in part because he reported disabling pain but, when asked about medication, said he only takes the occasional aspirin. Ordinarily, the failure to take strong prescription analgesic medication could be evidence the claimant does not experience disabling pain. Here, however, there is no indication that Nielson has been prescribed analgesic medication or that prescription analgesic medication would help his condition. *See, e.g.*, The Merck Manual, supra, at 482 (Aspirin and other non-steroidal anti-inflammatory drugs have not generally been shown to be effective in treating fibromyalgia.). Accordingly, his failure to take strong prescription medication is not significant.

The ALJ further argues Nielson has not been compliant with his doctor's prescribed treatments. Ordinarily, if a claimant fails to follow a prescribe[d] treatment, the SSA may find the claimant is not disabled . . . This rule, however, only applies if the prescribed course of treatment will restore the claimant's ability to work . . . Here, the ALJ asserts there are "numerous references" to Nielson's "non-compliance with the medical regimen specified by his physicians." (Tr. 424). The ALJ made no citations to the record, but the court has found a number of references to Nielson's apparent refusal to stop smoking. Nielson was advised that stopping his smoking would help his lungs and his Peyronie's syndrome. (Tr. 170). There is, however, no evidence it would alleviate his chronic muscle weakness, pain, and fatigue and restore his ability to work. (Tr. 179). Accordingly, Nielson's failure to stop smoking is not a reason to disbelieve his subjective testimony of disability.

The ALJ states in passing that Nielson has maintained a "somewhat normal level of daily activity and interaction." (Tr. 424). Nielson reports he microwaves his TV dinner two to four times a week. (Tr. 127). He does laundry once a week using his electric three-wheeled cart. *Id.* He reads and watches television. *Id.* In a busy week, he drives ten or twelve times. *Id.* He and his wife visit with friends, family, and neighbors. *Id.*

On the whole, Nielson's record of daily activities, is not inconsistent with a finding of disability. Household activities are not generally performed with the persistence and pace required for substantial gainful activity. Nielson's ability to perform limited household activities is not persuasive evidence supporting the ALJ's decision to reject his subjective testimony of disability. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."); *See also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.") . . . In this case, the ALJ improperly discounted Nielson's testimony about the severity of his symptoms. The ALJ also improperly rejected the opinion of his treating physician. All of this evidence must be credited as a matter of law. Crediting this evidence indicates that Nielson has been disabled since October 1, 1984.

*See* Report and Recommendation at 11-19. Defendant's objections are denied.

## B. The Remaining Issues

As to the remaining issues that were not objected to by the parties, the Court has reviewed the entire record and concludes that Magistrate Judge Edmonds' recommendations are not

clearly erroneous. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

**III.  CONCLUSION**

Accordingly, IT IS HEREBY ORDERED as follows:

(1) Magistrate Judge Edmonds' Report and Recommendation (Doc. #13) is **ACCEPTED AND ADOPTED**.

(2) Plaintiff's Motion for Summary Judgment (Doc. #6) is **GRANTED**.

(3) Defendant's Cross-Motion for Summary Judgment (Doc. #9) is **DENIED**.

(4) Plaintiff's claim for disability benefits is **REMANDED FOR AN AWARD OF BENEFITS CONSISTENT WITH THE REPORT AND RECOMMENDATION AND THIS ORDER**.

(5)  The **CLERK OF THE COURT IS DIRECTED TO ENTER JUDGMENT ACCORDINGLY AND CLOSE THE FILE IN THIS MATTER**.

DATED this 22nd day of January, 2007.

FRANK R. ZAPATA
United States District Judge

- 7 -